IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| AMALGAMATED TRANSIT UNION, LOCAL NO. 1498, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 99-0327-CV-W-3-ECF |
| JEFFERSON PARTNERS, L.P., d/b/a JEFFERSON LINES, | ) ) ) | |
| Defendant. | ) ) | |

## ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND (3) CONFIRMING ARBITRATOR'S AWARD

### I. BACKGROUND

The material factual underpinnings to this dispute are undisputed, and are largely summarized in the arbitrator's Grievance, Arbitration Opinion and Award (the "Award"). Defendant (the "Company") operates a commercial bus operation with passenger routes in approximately eight midwestern states. Plaintiff is a labor union (the "Union") that is the exclusive bargaining unit for certain of the Company's employees (primarily, its drivers). The parties entered into a collective bargaining agreement ("CBA") that was in effect from March 1, 1995 through February 28, 1999. Article 30 of the CBA governs pay for the Union's members, and it essentially establishes five "tiers" of pay based upon the employee's years of service.

In November 1997, the Union learned that the Company was considering a single wage rate for all employees. The Company was having difficulty attracting entry-level drivers and the change in pay structure was designed to make employment more enticing for newly hired employees. This type of action was not unprecedented. In

1993, the Company instituted an across-the-board increase that maintained both the existence of the five tiers as well as the proportionate differential between them. The November 1997 plan called for all employees to be paid at the rates for the highest tier; thus, no employee would suffer a decrease in pay, but each employee would receive a different increase in pay depending upon how far they were from the fifth tier. For those already in the fifth tier, no pay increase was contemplated. The Union objected to the plan, but the company instituted it unilaterally.

The Union filed a grievance with the National Labor Relations Board ("NLRB") and invoked the CBA's arbitration provisions.[1] Proceedings before the NLRB were deferred pending the arbitrator's decision as to whether the CBA had been breached.[2]

The parties could not agree on how the issue should be framed for the arbitrator, so they submitted separate proposals on the issue. Moore Affidavit at ¶ 7. Both parties' proposals included a phrase directing the arbitrator to decide what the appropriate remedy should be in the event a breach had occurred. Moore Affidavit at ¶ 8. The parties agreed that the arbitrator would decide how the issues would be framed. Tr. at 5;[3] Moore Affidavit at ¶ 9. The arbitrator phrased the issue as follows:

> Whether the company violated the collective bargaining agreement and/or the past practices of the parties by unilaterally modifying the wage rates of bargaining unit members? If a violation occurred, what is the appropriate remedy?

---

[1]The parties presented another, unrelated matter to the arbitrator, but this matter is not a subject of the present litigation.

[2]Although the CBA provides for arbitration before a panel of three arbitrators, the parties agreed to submit the matter to a single arbitrator.

[3]"Tr. at __" is a reference to a page from the arbitration hearing.

Award at 2. There is no indication that the Company ever objected to the arbitrator's framing of the issue in this manner.[4]

The arbitrator determined that the Company violated the CBA by instituting a unilateral pay increase for some but not all employees because it destroyed the distinction between the five tiers established in the CBA. In addressing the appropriate remedy, the arbitrator observed:

> The company increased wages to approximately 60% of employees in 1998 and did not increase wages for the remaining more senior employees. It would be completely inequitable and impracticable at this time to require the wage increases paid to approximately 60% of the workforce to be repaid. The only fair way to address the contract violation is to require the employer to calculate the percentage increase it gave to junior employees and require payment of the same percentage increase to those employees who received no rate increase in 1998.

Award at 12. In summarizing his award, the arbitrator ordered the Company to "[p]ay all senior employees who did not receive a wage increase as a result of the company's unilateral wage increase in 1998. The payment shall be the same _percentage_ wage increase that was paid to members of the bargaining unit who received the 1998 increase and shall be for the same duration." Award at 13 (emphasis in original).

The Company requested reconsideration of the arbitrator's ruling on two grounds. The second ground presented involved a factual issue that is not raised in these proceedings. The first ground focused on Article 42.8 of the CBA, which declared in part that "[t]he arbitrators shall have no power to alter or amend the provisions of this contract in any respect." The arbitrator responded in a letter dated October 16, 1999 as follows:

---

[4]For that matter, the Company never suggests that the description of events contained in Moore's affidavit is incorrect. "All facts set forth in the statement [of uncontroverted facts] shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." Local Rule 56.1(a).

3

> The remedy in this situation must be consistent with both the collective bargaining agreement and the National Labor Relations Act. Essentially, the arbitrator determined that the wage increase . . . granted to only a portion of the work force was in derogation of the bargained for wage scale. Consequently, the wage increase was a discriminatory wage increase, was inherently destructive of NLRA Section 7 rights and by it's [sic] nature discouraged union membership, a prohibited practice under NLRA Section 8(a)(3).
>
> The only remedy available to the arbitrator which is not inherently destructive to Section 7 rights and will not discourage union membership is the wage increase[ ] he awarded to those employees to whom the employer failed to grant a proportionate wage increase.

The arbitrator then briefly discussed other available options (including the option of forcing the beneficiaries of the unilateral raise to disgorge the increased wages) and pointed out that all were destructive to union representation.

## I.  DISCUSSION

### A.  Overview

The Union filed the instant suit, seeking enforcement of the arbitrator's decision. The Company has countered with two arguments, both of which focus on the remedy selected by the arbitrator. First, the Company argues that the remedy effectively amended the CBA in violation of Article 42.8, and the arbitrator exceeded his power in doing so. Secondly, the Company argues that the arbitrator did not draw the remedy from the "essence" of the CBA given that he relied (as revealed in the October 16 letter) on such external sources as the NLRA. Significantly, the Company's arguments are limited to the remedy imposed by the arbitrator; the Company does not challenge the arbitrator's conclusion that the unilateral decision to give some of the employees a pay raise violated the CBA. It is also significant that the Company presents no suggestion as to what remedy should have been awarded.

4

### B. Was the Remedy Explicitly Barred by Article 42.8?

The Company insists that the arbitrator exceeded his power by ordering a wage increase to certain employees. By altering the pay structure the arbitrator effectively altered the CBA in violation of the restrictions on his power established in Article 42.8. Plaintiff characterizes the award as "damages" which are not prohibited by the CBA and contends that the CBA was not altered or amended.

The Court does not believe it is necessary to determine the proper label for the award because the Company agreed to allow the arbitrator to determine the appropriate remedy. The Company joined in the Union's request that the arbitrator determine the appropriate remedy and cannot now complain that the CBA deprived the arbitrator of that power. E.g., Homestake Mining Co. v. United Steelworkers of Am., 153 F.3d 678, 680 (8th Cir. 1998). This principle applies equally even if the CBA declares that it cannot be altered or amended by the arbitrator. See Local 238 Int'l Brotherhood of Teamsters v. Cargill, Inc., 66 F.3d 988, 990-91 (8th Cir. 1995). Having agreed with the Union that the arbitrator should determine the appropriate remedy, the Company cannot now complain that the arbitrator did what the parties agreed he could do.

### C. Was the Remedy Derived From the "Essence" of the CBA?

An arbitrator's award must "draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). The Company argues that in describing his award as "fair" the arbitrator revealed that he was simply imposing his own views of justice and was not basing his decision on the CBA. The Company's argument (1) misconstrues a single word used by the arbitrator and (2) ignores the meaning of the phrase "essence of the contract."

> The "essence" of a collective bargaining agreement cannot always be divined by the same process that a court uses in considering a more typical commercial contract. As the Supreme Court explained . . ., [t]he collective agreement covers the whole employment relationship. It calls into being a new common law – the common law of a particular industry or of a particular plant. Therefore, [t]he labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law – the practices of the industry and the shop – is equally a part of the collective bargaining agreement although not expressed in it.

International Woodworkers of Am. v. Weyerhauser Co., 7 F.3d 133, 135 (8th Cir. 1993) (quotations and citations omitted). Consistent with these principles, it is also appropriate for the arbitrator to consider relevant provisions of the NLRA, if only to insure that a particular remedy does not constitute an unfair labor practice or other violation of the Act.

The arbitrator's use of the word "fair" to characterize his award does not automatically suggest he resorted to his independent sense of what should be done in this case. The record clearly demonstrates that he considered relevant past events when he observed that on the only other occasion in which the Company unilaterally altered the pay scale it did so by instituting an across-the-board increase. The arbitrator was also properly concerned about imposing a remedy that discouraged union membership and thereby ran afoul of the NLRA, and that he was aware of the need to impose a remedy that effectuated the parties' intent in agreeing to the CBA.

It is incorrect to state that the remedy was completely divorced from the CBA. In one sense, the five tiers represented quantifiable wages for which each party bargained. In an equally applicable sense, however, the five tiers represented the differentiation between various levels of seniority for which the Union bargained. Moreover, the tiers represented not only the *existence* of a differential between the various levels, but the *degree* of that differentiation. By replacing the tiers with a different system of compensation, the Company deprived the Union of something for which it had bargained. Clearly, a remedy that requires the Company to increase wages for all employees (instead of some employees, as it had done) would reinstate

the existence of and differential between the five tiers and in that way draws it essence from the CBA.

Certainly, the arbitrator could have achieved the same goal by ordering the beneficiaries of the pay increase to return the proceeds.[5]  However, the Court is not empowered to weigh the relative merits of the possible remedies.  The Court cannot conclude that the remedy ordered did not draw its essence from the CBA, so the Court cannot set aside the award.

### III.  CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is denied, the Plaintiff's cross-motion for summary judgment is granted, and the arbitrator's award is confirmed.  The Defendant is ordered to pay all senior employees who did not receive a wage increase as a result of the company's unilateral wage increase in 1998.  The payment shall be the same percentage wage increase that was paid to members of the bargaining unit who received the 1998 increase and shall be for the same duration.

IT IS SO ORDERED.

DATE: 1/6/2000

/s/_____
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

---

[5]It is at this point in the analysis that the Company's curious failure to suggest what remedy should have been awarded is most glaring.